IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VARENA MCCLOUD,** | ) |
| Movant, | ) ) ) |
| v. | ) ) No. 10 C 6810 |
| **UNITED STATES OF AMERICA,** | ) ) |
| Respondent. | ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Varena McCloud ("petitioner" or "McCloud") has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. For the reasons explained below, that petition is denied.

**I.**

On February 5, 2008, McCloud, along with 17 co-defendants, was charged with wire fraud, in violation of 18 U.S.C. § 1343, in connection with a $7.2 million mortgage fraud scheme. On January 9, 2009, McCloud entered a blind plea of guilty to eight counts of the indictment and filed a plea declaration with this court. On October 23, 2009, I sentenced McCloud to 57 months' imprisonment, followed by three years' supervised release, and ordered restitution in the amount of $1,318,275. McCloud filed a notice of appeal with the Seventh Circuit on October 30, 2009, but McCloud voluntarily dismissed her appeal on March 3, 2010. McCloud filed

a motion pursuant to 28 U.S.C. § 2255 on October 22, 2010.

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence has been founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992); 28 U.S.C. § 2255. If the court determines that any of these errors infected the judgment or sentence, the petitioner's conviction will be vacated or set aside, and the petitioner will be discharged, resentenced, or granted a new trial. 28 U.S.C. § 2255.

Because a motion under § 2255 is not a substitute for a direct appeal, *United States v. Barger*, 178 F.3d 844, 848 (7th Cir. 1999), a petitioner cannot raise three issues: "(1) issues that were raised on direct appeal absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural fault as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (footnote omitted) (emphasis in original), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

### A. Plea Not Knowing and Voluntary

The government argues that McCloud's first claim – that her plea was not knowing and voluntary – is not reviewable by this court. Specifically, it maintains that because McCloud failed to raise this issue on appeal, it has been procedurally defaulted and is not properly before this court. *Belford*, 975 F.2d at 313. Relying on *Bousley v. United States*, 523 U.S. 614, 621-22 (1998), McCloud maintains that she has not procedurally defaulted her claim because she could not have presented her claim on appeal based on the record. McCloud argues that "it is evidence *not in the record* which is determinative on what Movant's understanding of her plea was." Reply at 3.

McCloud cannot avoid procedural default here. In *Bousley*, a petitioner attempted to challenge the voluntariness of his plea despite the fact that he failed to raise the claim on appeal. 523 U.S. at 621. He attempted to argue that "his claim falls within an exception to the procedural default rule for claims that could not be presented without further factual development." *Id*. The Supreme Court recognized that, in *Waley v. Johnson*, 316 U.S. 101, 104 (1942), it held that there was an exception to procedural default "for a claim that a plea of guilty had been coerced by threats made by a Government agent, when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'" 523 U.S. at 622 (quoting

3

*Waley*, 316 U.S. at 104). In rejecting the applicability of *Waley*, the *Bousley* Court concluded that the petitioner's claim was distinguishable from the petitioner in *Waley* (it was not based on government coercion) and could have been presented on appeal based on the record from the plea hearing. 523 U.S. at 622.

As was the case in *Bousley*, *Waley* is inapposite. There is no suggestion of government coercion or other threats here. In addition, petitioner's attempt to analogize her case to *Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that a § 2255 movant may bring an ineffective assistance of counsel claim for the first time on collateral review because the trial record on appeal may not be adequately developed to analyze that type of claim), is totally unsupported. In the end, I reject McCloud's argument because the record is clear that McCloud understood that she was entering into a blind plea and that, ultimately, I had the final say in what her sentence would be. She specifically acknowledged that no one made any promises to induce her to plead guilty. Further, the plea colloquy and Plea Agreement make clear that McCloud understood the highest possible sentences she faced and the record also contains all her under-oath answers to my questions. Petitioner's conversations with her counsel may go to her ineffective assistance of counsel claim, but she has failed to show why they are relevant here. While she alleges that she did not understand until her sentencing that she was going to receive a

much longer period of incarceration than her counsel had originally anticipated, she was certainly aware of, once she was sentenced, the facts underlying her claim that her plea was not voluntary.

Because McCloud failed to show "cause and prejudice," her claim is procedurally defaulted.

**B.   Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that her attorney's performance was deficient; and (2) that such representation prejudiced her case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong is satisfied by showing that counsel's performance fell below the "objective standard of reasonableness" guaranteed under the Sixth Amendment. *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 687). To satisfy the *Strickland* prejudice element, a petitioner must demonstrate that it is reasonably likely that, but for her counsel's errors, the decision reached would have been different. *Strickland*, 466 U.S. at 696.

The court begins with the "strong presumption" from *Strickland* that an attorney's assistance was effective within the meaning of the constitution. 466 U.S. at 689. Further, in assessing an attorney's performance, the court must look at the whole of his representation of the petitioner, not simply the isolated examples about which the petitioner is complaining. *Kavanagh v. Berge*, 73

F.3d 733, 735 (7th Cir. 1996). In appropriate cases, the court may skip the performance component of *Strickland* and proceed directly to the prejudice question. *Strickland*, 466 U.S. at 697.

McCloud maintains that her counsel was ineffective at three different stages: (1) pre-plea; (2) during the change of plea hearing; and (3) at sentencing. I address each below.

### 1. Pre-Plea Performance

With respect to counsel's performance prior to McCloud's plea, McCloud alleges that "counsel failed to adequately advise her resulting in a substantial misunderstanding of the application of the guidelines and likely sentence." § 2255 Mot. at 6. McCloud alleges that her counsel told her that, in counsel's opinion, she would fall within a guideline range of 27 to 33 months. McCloud also asserts that her conversations with her counsel led her to believe that she would be likely to receive a sentence of probation with some term of community or home confinement.

McCloud's claim seems to boil down to the following: her counsel was mistaken when she advised McCloud that her likely applicable guideline range would be 27 to 33 months. However, based on the facts currently before me, this allegation is insufficient to support a claim of ineffective assistance of counsel. As the Seventh Circuit has made clear, "[A]n attorney's mere inaccurate prediction of a sentence, standing alone, does not demonstrate the deficient performance component of a claim of

6

ineffective assistance of counsel." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996) (internal quotations and citations omitted). "This holding emerges from the acknowledgment that the sentencing consequences of guilty pleas (or, for that matter, guilty verdicts) are extraordinarily difficult to predict." *Id.* The Seventh Circuit explained that,

> [A] mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great . . . . A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of deficiency. A defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him.

*Id.* A court may "factor the magnitude of the error into its assessment of whether the legal advice was that of a reasonably competent attorney." *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007).

Here, McCloud has not shown that her counsel's advice was not given in good faith based on counsel's application of the law to the facts of her case. As the Seventh Circuit made clear, a "mistaken prediction" is not sufficient to show deficient performance. Because counsel's estimate of a possible sentence was 27 to 33 months, and McCloud received a sentence of 57 months, I do not conclude that counsel engaged in a "gross mischaracterization of the sentencing consequences" of the plea.

7

In addition to failing to show deficient performance, McCloud likewise has failed to show prejudice. The prejudice component focuses on whether counsel's performance affected the outcome of the plea process. McCloud must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Seventh Circuit has made clear that "a mere allegation by the defendant that [she] would have insisted on going to trial is insufficient to establish prejudice." *Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003). The defendant must present objective evidence that a reasonable probability exists that she would have elected a trial. *Id*. at 773.

Here, McCloud merely asserts, without any other evidence in support, that she would have gone to trial had she understood that she was facing a sentence of 57 months. McCloud has not convinced me that a reasonable probability exists that she would have insisted on going to trial but for the mistaken guidelines calculation. If convicted on all eight counts after a trial, McCloud faced a possible maximum sentence of 20 years for each count in the indictment. In light of the severity of such a possible sentence, I cannot conclude that a reasonable probability exists that she would have gone to trial. This claim fails.

## 2. Change of Plea Hearing

McCloud alleges that she received ineffective assistance of counsel at the change of plea hearing.  McCloud argues, "At the plea, when the Court, *sua sponte*, began to question Movant beyond the facts she was prepared to admit, Movant's counsel acquiesced in this spontaneous and unusual procedure without consultation with Movant, despite her demonstrated lack of understanding of some of the allegations."  § 2255 Mot. at 6.  In essence, McCloud argues that counsel failed to object or consult with McCloud when the court established the factual basis for the plea by reading each paragraph of the indictment and eliciting a "yes" or "no" answer from McCloud.  According to McCloud, the questions by the court "greatly expanded the scope of McCloud's participation in the mortgage fraud scheme, and the disparities in the guideline range between her own counsel's estimate and the one ultimately suggested by the government and adopted by the Court."  Reply at 7.

McCloud's counsel's performance at the change of plea hearing was constitutionally adequate.  McCloud's counsel was not deficient at the change of plea hearing because she did, in fact, object to the government's version of the facts and stopped McCloud from admitting to the broader factual basis submitted by the government.  Defense counsel made clear that McCloud was pleading blind because the loss amount was in dispute.  To the extent McCloud is arguing that her counsel was ineffective for failing to object to my

9

reading the eight counts of the indictment to McCloud and asking her if she agreed with those paragraphs, I reject this argument. In her Plea Declaration, McCloud acknowledged: (1) her awareness of the eight charges of wire fraud against her in the indictment; (2) she read the charges and they were explained to her by her attorney; (3) she fully understood the nature and elements of the charges stated in the indictment; and (4) she agreed to enter a voluntary plea of guilty to those charges. Once the parties made me aware that McCloud disagreed with the version of the facts as recited by the government at the plea hearing, I read out the paragraphs and counts in the indictment in which McCloud was named. McCloud verified that all these statements were true. McCloud fails to explain how the relevant paragraphs in the indictment expanded the factual basis of her plea declaration. She does not point to even one fact in the indictment which contributed to her receiving a greater sentence at sentencing. The procedure I utilized ensured that McCloud could enter into a knowing guilty plea, while maintaining her ability to challenge the loss amount and relevant conduct.

Nor do I see any prejudice here. Even if counsel had objected to my reading McCloud the pertinent paragraphs of the indictment and asking her if she agreed or not, there is not a reasonable likelihood that the outcome of that hearing would have been different. In her Plea Declaration, McCloud specifically averred

that she understood the charges against her, that her attorney had explained them to her, and that she was prepared to plead guilty to them. Therefore, asking McCloud whether or not she agreed with the paragraphs in the indictment did not go beyond what was in her Plea Declaration, and I would have overruled any objection made by defense counsel. This claim fails.

### 3. Sentencing Hearing

McCloud faults her counsel for failing to object at the sentencing hearing to: (1) the manager/supervisor enhancement under U.S.S.G. §3B1.1(b); and (2) the loss amount suggested by the government.

With respect to these two arguments, I find that counsel was not constitutionally deficient. In preparing McCloud's Presentence Investigation Report ("PSR"), the Probation Department recommended that I increase McCloud's offense level under U.S.S.G. §3B1.1(b) by three points because McCloud "was a manager or supervisor and the criminal activity involved five or more people, or was otherwise extensive." PSR at 7. Despite McCloud's argument to the contrary, there is evidence in the record that she recruited and trained co-defendant Charline Battala in effectuating the mortgage fraud scheme. In Battala's Grand Jury Statement, which I read and relied upon in sentencing McCloud, Battala clearly states that she was shown how to use deceptive methods to qualify borrowers for mortgage loans by McCloud. In addition, McCloud herself explained

that she directed co-defendant Hattie Brooks to procure false VORs in order to facilitate the mortgage fraud scheme.[1] Based on this evidence, McCloud qualified for the three-point enhancement under §3B1.1(b). As a result, her counsel was not ineffective for failing to object to the enhancement (or for failing to preserve the issue for appeal), and no prejudice could be shown because any objection would have been overruled.

Turning to the loss amount dispute, McCloud argues that her counsel was deficient when she failed to object at sentencing to the government's inclusion of 40 mortgage applications in determining loss. McCloud claims that she should have only been held accountable for the 8 mortgages specifically mentioned in the indictment. She also argues that her counsel should have argued that the loss in home prices which resulted from the downturn in the real estate market was not foreseeable to her at the time of the scheme. Finally, she argues that by failing to make these objections, counsel failed to preserve these issues for appeal.

Once again, I conclude that McCloud's counsel was not ineffective in failing to object to the government's and the PSR's calculation of loss.[2] With respect to the court's inclusion of the

---

[1] I recognize that there is evidence that co-defendant Annie McCloud, Varena's mother, also directed Brooks in the procurement of the false VORs. *See* Annie McCloud Grand Jury Testimony at 8.

[2] In arguing that McCloud's counsel was not ineffective in failing to object to the government's loss calculation, the

12

40 mortgages, McCloud cannot show that she was prejudiced by her counsel's failure to object. Even if her counsel had objected to the inclusion of 32 additional mortgages which were not specifically mentioned in the indictment, I would nevertheless have considered them as relevant conduct at sentencing. McCloud was a participant in the fraud associated with these 40 loans, and the losses suffered by the lenders are directly attributable to her. Because I would have included these additional 32 loans in my calculation of loss even if defense counsel had objected, McCloud cannot show that she was prejudiced by her counsel's failure to object at sentencing to their inclusion in the loss amount.

McCloud also argues that her counsel's representation was deficient because she failed to argue that the losses outlined by the government were not foreseeable to McCloud. According to McCloud, she could not have foreseen the extent of the losses because all the appraisals which supported the loans at issue were "honest." McCloud Mem. at 12. She further asserts that "there is

---

government mentions that defense counsel did, in fact, retain an expert. At the sentencing hearing, defense counsel stated, "Your Honor has appointed or allowed me to retain an expert to evaluate the market values that were presented by the government, and I did so, and I did not submit a report because it would not have necessarily changed the loss amount." 10/23/09 Hrg. at 11. Unfortunately, neither party has explained what this expert was asked to review specifically, and McCloud has made multiple arguments (both at sentencing and in her § 2255 motion) which might have potentially been addressed by this expert. In any event, this is evidence that McCloud's defense counsel took steps to counter the government's loss calculation.

13

no evidence that these appraisals were fraudulent." *Id.* McCloud maintains that she could not have reasonably foreseen, at the time of the fraud, the subsequent real estate market collapse.

I conclude that McCloud's counsel was not ineffective. First, the premise of McCloud's argument is factually incorrect. There is, in fact, evidence that McCloud ordered fraudulent appraisals. *See* Grand Jury Statement of Charline Batalla at 7 (describing how McCloud contacted an appraiser and ordered him to change appraisal to match information on false lease). Further, McCloud herself acknowledged that the appraisers she used often asked her at what value she needed a particular home appraised. This is highly suggestive that appraisers were providing her with less-than-honest appraisals.

And, in any event, any objection by counsel would have failed as a matter of law. Under the sentencing guidelines, McCloud's guideline range was dependent, in part, on the actual or intended loss caused by her fraud. The comment notes to §2B1.1 instruct that the court is to use either the intended or the actual loss to the victim, whichever is greater. U.S.S.G. § 2B1.1 cmt. n.3(A). Pertinent here is that "actual loss" is defined as the "reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. at cmt. n.3(A)(i). Comment note 3 further clarifies that "reasonably foreseeable pecuniary harm" is harm that "the defendant knew, or under the circumstances, reasonably should have known, was a

14

potential result of the offense." *Id*. at cmt. n.3(A)(iv). In addition to these pertinent provisions, comment note 3, entitled "Credits Against Losses," also comes into play here. That comment instructs that in cases involving collateral (as in the case of a home mortgage), the calculated loss shall be reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral." *Id*. at cmt. n.3(E)(ii). Importantly, there is no requirement of reasonable foreseeability in the "Credits Against Losses" section.

McCloud misses the import of the "reasonably foreseeable" language in §2B1.1. The "reasonably foreseeable pecuniary harm resulting from the fraud" refers to the full amount remaining due on the fraudulently obtained loan, as an unqualified borrower's default is clearly a reasonably foreseeable possibility in a mortgage fraud scheme. *See U.S. v. Turk*, -- F.3d --, No. 09-5091-cr, 2010 WL 4840135, at *5-6 (2d Cir. Nov. 30, 2010) (concluding that under §2B1.1 the only loss that need have been foreseeable to the defendant is the loss of the unpaid principal); *U.S. v. Mallory*, 709 F. Supp. 2d 455, 458 (E.D. Va. 2010) (same). *Turk* and *Mallory* make clear that the phrase "reasonably foreseeable pecuniary harm" has nothing to do with whether or not a defendant could have anticipated a drop in property values. *Id*. Thus, I reject McCloud's argument. Having reviewed this issue once again, I conclude that the method I used in calculating loss for purposes

of McCloud's sentencing (taking the value of each mortgage loan and subtracting the amount the lender ultimately recovered for each property) was proper. *See* U.S.S.G. § 2B1.1 cmt. n.3(E); *Turk*, 2010 WL 4840135, at *5-6; *Mallory*, 709 F. Supp. 2d at 457-58. McCloud's counsel was not ineffective in failing to make an objection that would clearly have failed. Likewise, she cannot show that she was prejudiced, as any objection would have been overruled.[3]

## II.

The bases for relief raised by McCloud, taken either singularly or cumulatively, fail. Thus, an evidentiary hearing is unnecessary. *See Barker*, 7 F.3d at 633, n.3 (no evidentiary hearing required where review of record indicates petitioner not entitled to any relief). For all the foregoing reasons, McCloud's motion pursuant to 28 U.S.C. § 2255 is denied.

**ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
United States District Judge

Dated: January 11, 2011

---

[3] Because McCloud's counsel was not ineffective for failing to make the objections identified by McCloud, her counsel could not have been ineffective for failing to preserve these meritless issues for appeal.